UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ADRIANE GENOVA, on behalf of
herself and others similarly situated,

*Plaintiff,*

v.

IC SYSTEM, INC. and JOHN DOES 1-
25,

*Defendants.*

Civil Action No. 16-5621

OPINION

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Defendant IC System, Inc.'s ("Defendant") motion to dismiss Plaintiff Adriane Genova's ("Plaintiff") Amended Complaint. Dkt. No. 10. For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part.

I. **BACKGROUND**[1]

In this putative class action lawsuit, Plaintiff alleges that Defendant used unfair and unconscionable means to attempt to collect a debt, in violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.

At some time prior to September 29, 2015, Plaintiff incurred a debt to Preventive Healthcare Association ("PHA"). Am. Compl. ¶ 17. Subsequently, PHA hired Defendant to collect the debt, which it alleged was past due. Id. ¶¶ 21, 23. On September 29, 2015, Defendant sent a letter to Plaintiff in an attempt to collect on the debt. Id. ¶ 24. Among other things, the front of the letter included the following information:

---

[1] The following facts are drawn from the Amended Complaint, and are taken as true for the purposes of this motion. Dkt. No. 7.

1

<pre>
                    Principal Due: $326.83
                    Collection Charge Due: $55.56
                    **BALANCE DUE: $382.39**
</pre>

Id. ¶ 27 (emphasis in original).

The $55.56 Collection Charge ("Collection Charge") was a 17% contingent fee, which represented Defendant's anticipated compensation if it successfully collected on the debt. Id. ¶¶ 28-32. Because Defendant had not yet recovered any funds from Plaintiff at the time the letter was sent, it was not then entitled to any contingent fee and Plaintiff was not liable for any such fee. Id. ¶¶ 33-24. In addition, the collection charge purportedly bears no relation to and is substantially greater than costs actually incurred by Defendant or PHA in their attempts to collect the debt. Id. ¶ 35. Plaintiff contends that Defendant has transmitted thousands of similar letters to consumers. Id. ¶ 36.

On September 15, 2016, Plaintiff filed a Complaint against Defendant. Dkt. No. 1. On October 25, 2016, Defendant filed a motion to dismiss the Complaint. Dkt. No. 10. On November 7, 2016, Plaintiff filed an Amended Complaint. Dkt. No. 7. The Amended Complaint alleges that Defendant's representation that Plaintiff owed the Collection Charge violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1) because the fee was not yet incurred and was not expressly authorized by the contract underlying the debt. Am. Compl. ¶¶ 38-40, 44-48, 49-53. In other words, Defendant's letter misled consumers by creating the false impression that it had incurred a collection fee, when in fact it had not. Id. ¶ 37.

On November 21, 2016, Defendant filed a motion to dismiss the Amended Complaint. Dkt. No. 10. In its motion to dismiss, Defendant makes five primary arguments: (1) that Plaintiff does not have Article III standing to maintain this action; (2) that Plaintiff's claims fail because the Collection Charge was expressly authorized by the contract underlying her debt; (3) that Plaintiff's claims fail because Defendant's alleged misstatement was not "material"; (4) that Plaintiff's claims

under Section 1692f must be dismissed as duplicative of her claims under Section 1692e; and (5) that Plaintiff's class allegations must be struck because she cannot satisfy Rule 23's numerosity and ascertainability requirements. Each of these will be addressed in turn.

## II. ANALYSIS

### A. Article III Standing

Defendant first argues that the Amended Complaint must be dismissed because Plaintiff's alleged statutory harm under the FDCPA is insufficient to demonstrate an injury-in-fact. The Court disagrees.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." U.S. Const., art. III, § 2. To establish Article III standing, a plaintiff must demonstrate: (1) an "injury in fact"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (quotations omitted). To establish an injury-in-fact, a plaintiff must show that "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (quoting Lujan, 504 U.S., at 560). To be "particularized," an injury "must affect the plaintiff in a personal and individual way." Id. (quotation omitted). A "concrete" injury is "*de facto*; that is, it must actually exist." Id. (quotations omitted).

The Supreme Court recently declared in Spokeo, Inc. v. Robins that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 1549. In this way, a "bare procedural

violation, divorced from any concrete harm," cannot satisfy Article III's injury-in-fact requirement. Id. Relying on these pronouncements, Defendant contends that Spokeo "changed the landscape for class action litigation based on technical violations of federal statutes." Def.'s Br. at 8, Dkt. No. 10-1. So the argument goes, because Plaintiff merely received a letter containing a misstatement of a debt—but did not actually pay it—her alleged harm only amounts to a "bare procedural violation" of the FDCPA and is insufficiently concrete to confer Article III standing. Id.[2]

But as the Third Circuit has repeatedly observed, Spokeo did not transform the requirements for standing. See In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 637–38 (3d Cir. 2017) ("[W]e do not believe that the Court so intended to change the traditional standard for the establishment of standing . . . ."); In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 273 (3d Cir. 2016), cert. denied sub nom. C. A. F. v. Viacom Inc., 137 S. Ct. 624 (2017) ("The Supreme Court's recent decision in Spokeo, Inc. v. Robins does not alter our prior analysis . . . ."). In fact, Spokeo itself reaffirmed that Congress "'has the power to define injuries' . . . 'that were previously inadequate in law,'" and thus may pass "'statutes creating legal rights, the invasion of which creates standing,' even absent evidence of actual monetary loss." In re Horizon, 846 F.3d at 636, 638 (quoting Spokeo, 136 S. Ct. at 1549 and In re Google Inc. Cookie Placement Consumer Privacy Litigation, 806 F.3d 125, 134 (3d Cir. 2015)) (emphasis removed). In such cases—where the plaintiff alleges a statutory violation—the Court must determine whether Congress has "elevat[ed]" the harm "to the status of legally cognizable injur[y]." Spokeo, 136 S.

---

[2] The primary dispute here is whether Plaintiff's alleged harm is concrete, as there is no real doubt that her harm is particularized. See, e.g., Thomas v. John A. Youderian Jr., LLC, No. 16-01408, 2017 WL 1250988, at *4 (D.N.J. Feb. 3, 2017) ("There is no doubt that Thomas's alleged injury is particularized; it clearly is, because Thomas personally received the Letter, and the debt reported therein is said to be his.").

Ct. at 1549 (quotations omitted).

Following Spokeo, numerous courts have considered whether a violation of the FDCPA can give rise to a concrete injury under Article III. These courts have noted that Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors" and promote further action to "protect consumers against debt collection abuses." 15 U.S.C. § 1692. It follows that "[t]he right congress sought to protect in enacting this legislation was . . . not merely procedural, but substantive and of great importance." Blaha v. First National Collection Bureau, No. 16-2291 (D.N.J. Nov. 10, 2016), Slip Op., at *16. Accordingly, the vast majority of courts have concluded that violations of the FDCPA give rise to injuries that are sufficiently concrete to confer standing under Article III. See, e.g., Fuentes v. AR Res., Inc., No. 15-7988, 2017 WL 1197814, at *5 (D.N.J. Mar. 31, 2017) ("[T]his Court joins the overwhelming majority of courts that have determined that FDCPA violations under §§ 1692e and 1692f give rise to concrete, substantive injuries sufficient to establish Article III standing.") (quotation omitted); Pisarz v. GC Servs. Ltd. P'ship, No. 16-4552, 2017 WL 1102636, at *5 (D.N.J. Mar. 24, 2017) (noting that "[s]ince Spokeo was decided, the overwhelming majority of courts that have faced Article III standing challenges in FDCPA cases . . . have determined that a violation of the FDCPA produces a 'concrete injury'") (quotation omitted).

In fact, a number of courts have specifically held that where, as here, a debt collector demands collection costs or other fees before they are incurred and if not authorized by the contract, the alleged FDCPA violation constitutes an injury-in-fact under Article III. As recently explained by a court in this district:

> Plaintiff has a substantive, statutory right under the FDCPA to be free from false or deceptive information in connection with the collection of a debt, which is alleged to have been infringed by Defendant's representation that it was entitled to charge a fee that is

5

> alleged to be neither authorized by law nor permitted by the contractual terms of Plaintiff's underlying debt instrument. Plaintiff was thus placed at risk of economic injury by potentially being deceived into paying a fee that was legally barred. . . . Accordingly, even after Spokeo, because Congress has defined statutory injuries under the FDCPA that do not require actual, pecuniary injury, where, as in the case of the receipt of a collection letter charging unauthorized fees, the plaintiff's claimed injury is sufficiently particularized and concrete, the requirements of Article III standing are met.

Fuentes, 2017 WL 1197814, at *5-6; see also Thomas, 2017 WL 1250988, at *9 (holding that where a consumer receives a communication that "impliedly represent[s] that the debt collector is authorized to charge what is in fact an unauthorized fee," the alleged injury is sufficiently concrete under Spokeo); Carney v. Goldman, No. 15-260, 2016 WL 7408849, at *5 (D.N.J. Dec. 22, 2016) (same); Kaymark v. Udren Law Offices, P.C., No. 13-419, 2016 WL 7187840, at *7 (W.D. Pa. Dec. 12, 2016) (same).

Here Plaintiff alleges that Defendant demanded the payment of a collection fee that had not been incurred and was not authorized by contract or law. This demand not only arguably violated Plaintiff's substantive rights under the FDCPA, but in creating the false impression that the unauthorized fee was actually authorized, it also increased the risk that Plaintiff would pay an amount in excess of what she actually owed. Am. Compl. ¶¶ 37-42. These types of harm are "precisely that which the FDCPA was intended to guard against." Carney, 2016 WL 7408849, at *4. Plaintiff's alleged harm is sufficiently concrete to confer standing under Article III.[3]

---

[3] To the extent Defendant contends that other unnamed class members may not have standing, see Reply at 9, Dkt. No. 22, only the named plaintiff must establish standing at this time. See, e.g., In re Horizon, 846 F.3d at 634 ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quotation omitted); Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 367 (3d Cir. 2015) ("Quite simply, requiring Article III standing of absent class members is inconsistent with the nature of an action under Rule 23.").

### B. FDCPA Claims Under Sections 1692e and 1692f

Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Because the FDCPA is a remedial statute, its language is construed "broadly, so as to effect its purpose." Jensen v. Pressler & Pressler, 791 F.3d 413, 418 (3d Cir. 2015) (quotation omitted). Courts therefore analyze the communication giving rise to an FDCPA claim from the perspective of the "least sophisticated debtor." Id. This is an objective standard, and thus a "plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." Id. at 419 (emphasis omitted).

To state a claim under the FDCPA, a plaintiff must allege that: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014). Defendant does not challenge the first three elements; it only argues that Plaintiff has not stated a claim for violation of Sections 1692e or 1692f of the FDCPA.

    i. Section 1692f Claims

        1. Failure to State a Claim

Defendant argues that Plaintiff's claims under 1692f must be dismissed for failure to state a claim. The Court disagrees.

Plaintiff maintains claims under Sections 1692f and 1692f(1). Section 1692f is a catchall provision providing that a "debt collector may not use unfair or unconscionable means to collect

or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f also enumerates several nonexhaustive examples of conduct that violates Section 1692f. See id. § 1692f(1)-(8). Plaintiff's claim here focuses on Section 1692f(1), which provides that it is a violation for a debt collector to "collect[] . . . any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Defendant contends that Plaintiff cannot make a claim under Section 1692f(1) because the PHA Agreement—the contract underlying Plaintiff's debt—expressly authorizes the Collection Charge.[4] It reads, in relevant part:

> I am also responsible to pay . . . any fees incurred should my account require collection action (E.G. late fees, collection agency, court or attorney costs).

PHA Agreement at 1. The parties do not appear to dispute that, assuming the Agreement governs the parties' relationship, Defendant may *at some time* seek to collect fees that were incurred or earned during the collection of Plaintiff's debt. Rather, Plaintiff argues that the Agreement did not authorize Defendant to charge a 17% collection fee, untied to the costs of collection, *before* any collection costs were actually incurred or earned. In other words, because Defendant had not yet incurred costs amounting to the amount sought or collected any funds that would entitle it to a contingency fee at the time of the communication, it was not entitled to the Collection Charge. Am. Compl. ¶¶ 28-34. The Court agrees with Plaintiff that the plain language of the Agreement did not authorize Defendant to seek the Collection Charge at the time of the communication.

---

[4] The Court may consider the PHA Agreement because the underlying agreement was specifically referenced in the Complaint. See Am. Compl. ¶¶ 13, 40, 51-52. In addition, Plaintiff attaches the Agreement to her opposition papers "[i]n the interests of expediency[] and to avoid a third round of unnecessary Motion practice," and refers to it throughout. Opp'n at 23 n.6; see also Zelman Declaration, Exhibit E ("PHA Agreement"), Dkt. No. 14-6.

The Third Circuit's decision in Kaymark v. Bank of Am., N.A., 783 F.3d 168 (3d Cir. 2015) is instructive. In Kaymark, the court considered whether a foreclosure complaint, which sought various fees that had not yet been incurred, constituted a violation of the FDCPA. Id. at 175. The underlying contract provided that the lender "may charge Borrower fees for services *performed in connection with* Borrower's default" and that the lender was "entitled to collect all expenses *incurred* in pursuing the remedies." Id. at 172 (emphasis in original). Based on that language, the plaintiff argued that the defendant breached the FDCPA by seeking fees that had not yet been incurred. Id. at 173-74. The court agreed, and explained:

> Kaymark has sufficiently alleged that Udren's attempt to collect those misrepresented fees was not "expressly authorized" by the mortgage contract or permitted by law. § 1692f(1). To be sure, Kaymark expressly agreed to the collection of certain fee categories, such as "attorneys' fees, property inspection and valuation fees." App. 72a (¶ 14). But the contract also specified that BOA could only charge for "services *performed* in connection with" the default and collect "all expenses *incurred*" in pursuing authorized remedies. App. 72a (¶ 14), 75a (¶ 22) (emphases added). While such language is arguably capable of more than one meaning, we must view the Foreclosure Complaint through the lens of the least-sophisticated consumer and in the light most favorable to Kaymark. In this perspective, the most natural reading is that Udren was not authorized to collect fees for not-yet-performed legal services and expenses, forming a basis for a violation of § 1692f(1).

Id. at 175–76.

The same reasoning applies here—because the PHA by its terms only required the consumer to pay any fees "incurred," Defendant was not "expressly authorized" to seek the Collection Charge, which represented an estimate of costs that had not yet been incurred or earned. And indeed, other courts have likewise held that where a contract authorizes a lender to seek costs incurred by the lender in collecting the debt but does not authorize a prospective or estimated fee, such demands are violative of Section 1692f(1) of the FDCPA. See, e.g., Ardino v. Solomon & Solomon, P.C., No. 13-1821, 2014 WL 268680, at *4 (D.N.J. Jan. 23, 2014) ("While the Ardinos

9

agreed to pay costs incurred by HESAA, they did not agree to pay—and Solomon had no basis to demand—a prospective or estimated fee."); Annunziato v. Collecto, Inc., 207 F. Supp. 3d 249, 261 (E.D.N.Y. 2016) (granting summary judgment for plaintiff under Section 1692f(1) because "the collection fees and costs sought by the Defendant in its letters to the class members did not reflect the actual costs associated with collecting the class members' delinquent accounts because the Defendant was not entitled to contingency fees until after it collected the debts"); cf. McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 246 (3d Cir. 2014) (holding that defendant violated the FDCPA by seeking fees that were merely estimates of the amounts owed, as the fees had not yet been incurred); Thomas, 2017 WL 1250988, at *12 (holding that the plaintiff stated a claim under Section 1692f(1) where the underlying contract did not "expressly authorize" a $3.00 convenience fee for credit card charges).

While Defendant concedes that it is "aware of the case law cited by Plaintiff," it nonetheless argues that the Court should hold otherwise based on concerns recently articulated in Vayngurt v. Sw. Credit Sys., L.P., No. 16-2261, 2016 WL 6068132, at *4 (E.D.N.Y. Oct. 14, 2016). Reply at 6-7. In Vayngurt, the court considered whether the defendant committed an FDCPA violation by seeking a "collection fee" along with a T-Mobile debt. 2016 WL 6068132, at *4. Similar to this case, the underlying contract provided that the user "'agree[s] to pay collection agency fees [T-Mobile] incur[s].'" Id. at *3. Yet the contract also stated that "'collection agency fees are *liquidated damages intended to be a reasonable advance estimate*' of collection costs." Id. (emphasis added). Based primarily on this language, the court ultimately determined that the parties "intended the collection fee to be owed at the same time as the principal." Id. at *4. It therefore held that the defendant had not violated the FDCPA by seeking payment of the "collection fee" at the same time as the debt. However, the Vayngurt Court made clear that it only

10

reached this conclusion because the plaintiff had "agreed to pay a reasonable estimate of T-Mobile's incurred costs *in advance*." Id. (emphasis in original). In fact, the court explicitly distinguished the cases relied upon by Plaintiff, including Ardino, because none of these "addressed a contract where the consumer expressly agreed to pay in advance." Id. at *5 n.3. Because the PHA Agreement at issue here did not expressly authorize Defendant to seek the Collection Charge in advance, the Vayngurt case is inapposite.[5]

In sum, the PHA Agreement only authorized fees actually "incurred" in the collection of the debt. Because the Collection Charge had not been incurred or earned by Defendant at the time of the communication, it was not "expressly authorized" by the Agreement. Thus, Plaintiff has stated a claim under Section 1692f(1).[6]

2. Potential Duplicative Claims

Defendant also argues that Plaintiff's claims under Sections 1692f and 1692f(1) should be dismissed because they are duplicative of her claims under Section 1692e. The Court holds that Plaintiff's claim under Section 1692f must be dismissed, but her Section 1692f(1) claim may go forward at this time.

---

[5] Defendant also briefly attempts to distinguish Kaymark, arguing that unlike in that case, where attorneys' fees were improperly sought despite the fact that a lawsuit had not even been filed, here Plaintiff "agreed to pay fees related to any 'collection action,' including fees related to a collection agency like ICS." Reply at 6. This argument is unpersuasive. The Amended Complaint alleges that the Collection Charge is a contingent collection fee that is not earned until Defendant actually collects on the debt, and that at the time of the communication, Defendant had not yet collected any of the debt. Am. Compl. ¶¶ 28-34. Thus, as in Kaymark, the requested fee was not yet due and owing at the time of the communication.

[6] To the extent Defendant argues that Plaintiff's claims under Section 1692f must be dismissed because they are not material, the Third Circuit has never applied the materiality requirement to 1692f claims. See Thomas, 2017 WL 1250988, at *13 (stating that the materiality requirement "does not apply to Section 1692f violations"). And even if there was a materiality requirement, "if the fee is not authorized by statute or contract, the implied representation that it was must be material." Id. at *13.

Although the Third Circuit has not yet explicitly addressed the issue, courts in this circuit have held that "conduct that is a violation of another section of the FDCPA 'cannot be the basis for a separate claim under § 1692f.'" Evans v. Portfolio Recovery Assocs., LLC, No. 15-1455, 2016 WL 4059645, at *6 (D.N.J. July 27, 2016) (quoting Turner v. Professional Recovery Servs., Inc., 956 F. Supp. 2d 573, 580 (D.N.J. 2013)). These courts have reasoned that because Section 1692f is a "catch-all provision for conduct that is unfair, but is not specifically enumerated in any other section of the FDCPA, . . . [it] 'cannot be the basis for a separate claim' for conduct that is already explicitly addressed by other sections of the FDCPA." Corson v. Accounts Receivable Mgmt., Inc., No. 13-01903, 2013 WL 4047577, at *7 (D.N.J. Aug. 9, 2013) (quoting Turner, 2013 WL 3441100, at *6).

To the extent that Plaintiff makes a claim under Section 1692f's general prohibition of "unfair or unconscionable means to collect or attempt to collect any debt," it is dismissed as duplicative.[7] However, it is less clear that this prohibition also applies to situations where a plaintiff alleges that a *specific enumerated sub-section* of Section 1692f was violated, such as Plaintiff's claim under Section 1692f(1) here. Often without discussion of this issue, courts have permitted claims under Section 1692f(1) to proceed even when the conduct underlying the alleged violation is identical to that underlying a separate claim brought under another section of the FDCPA. For example, in Kaymark, the Third Circuit held that where a communication sought attorneys' fees that had not yet been incurred, the plaintiff had stated a claim under Sections 1692e(2)(A), 1692e(10), *and* 1692f(1). 783 F.3d at 179. This holding led at least one court in this

---

[7] In fact, Plaintiff appears to concede that her Section 1692f claim must be dismissed, as her primary argument is that her Section 1692f(1) claim may not be dismissed as duplicative because it is *not* a claim under Section 1692f's general prohibition, but rather a claim under a specific subsection. See Opp'n at 34-37.

12

district to conclude that "the Third Circuit has determined that one course of conduct may state a claim under one of the FDCPA's other provisions and an enumerated section of § 1692f." Evans, 2016 WL 4059645, at *6 n.8.

Other courts have similarly permitted claims under Section 1692f(1) to proceed alongside other FDCPA claims premised on the same conduct. See, e.g., Thomas, 2017 WL 1250988, at *17 (permitting claims to proceed under Sections 1692f, 1692f(1), 1692e, 1692e(2), and 1692e(10), despite the fact that the same conduct formed the basis for each claim); Taylor v. Midland Funding, LLC, No. 14-00854, 2015 WL 4670314, at *8 (N.D. Ala. Aug. 6, 2015) (dismissing a claim under 1692f's catch-all provision, but permitting a claim under 1692f(1) to go forward, because " to the extent a plaintiff alleges how that conduct is unfair or unconscionable under the enumerated subsections of § 1692f, he may maintain claims for violations of both § 1692f and other provisions of the FDCPA"); Quinteros v. MBI Assocs., Inc., 999 F. Supp. 2d 434, 441 (E.D.N.Y. 2014) (permitting claims to proceed under Sections 1692e(2) and 1692f(1)); cf. Cohen v. Dynamic Recovery Sols., No. 16-576, 2016 WL 4035433, at *5 (D.N.J. July 26, 2016) (dismissing claims under Section 1692f as duplicative of claims brought under Section 1692e, but suggesting that if plaintiff had pointed to "any instance where Defendant engaged in one of the practices identified in § 1692f(1)-(8)," such a claim would not be dismissed as duplicative). Considering these holdings, and in light of Plaintiff's entitlement to plead alternative claims and the potential for different proofs with respect to Plaintiff's 1692e and 1692f(1) claims, the Court will not dismiss Plaintiff's Section 1692f(1) claim at this time.

    ii.  Section 1692e Claims

        1.  Failure to State a Claim

Defendant also argues that Plaintiff's claims under 1692e must be dismissed for failure to

state a claim. The Court again disagrees.

Plaintiff asserts claims under Section 1692e and 1692e(2)(A).[8] Section 1692e prohibits debt collectors from employing "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(2)(A) makes unlawful "[t]he false representation of . . . the character, amount, or legal status of any debt."

Defendant first argues that Plaintiff cannot maintain a claim under Section 1692e because the character, amount, and status of the debt was not misrepresented. Yet as described above, the PHA Agreement only authorized Defendant to seek fees that were actually incurred in the collection of the debt. Because Defendant "did not convey that the disputed fees were estimates or imprecise amounts" and implied that the Collection Charge was already incurred and owed, the letter "conceivably misrepresented the amount of the debt owed" in violation of Section 1692(2)(A). Kaymark, 783 F.3d at 175; see also McLaughlin, 756 F.3d at 246 (holding that the plaintiff stated a claim under Section 1692e(2) because "[n]othing [in the letter] says it is an estimate or in any way suggests that it was not a precise amount"); Thomas, 2017 WL 1250988, at *15 (joining other courts in holding that "convenience or processing fee language supporting a Section 1692f(1) claim naturally supports a claim under 1692e(2) as well"); Annunziato, 207 F. Supp. 3d at 261 (holding that the plaintiff had stated a claim under Section 1692e(2) because while the underlying agreement permitted the lender to collect a contingency fee, no collection costs had yet been incurred at the time the letter was sent); Quinteros, 999 F. Supp. 2d at 439-40 ("[I]f collection of a payment processing fee is unlawful under § 1692f(1), then the Processing Fee Statement is also 'false, deceptive, or misleading' under § 1692e(2), insofar as the statement

---

[8] The Amended Complaint also appears to assert claims under Section 1692e(10) and 1692e(5), see Am. Compl. ¶¶ 38, 44, 47, but Defendant makes no mention of these provisions in its motion, so any such claims will not be dismissed at this time.

implies the fee may be lawfully received"). Because, as the Court held above, Defendant was *not* entitled to collect the Collection Charge at the time of the communication, the letter includes a false representation in violation of Section 1692e(2)(A).

Defendant further contends that Plaintiff's Section 1692e claims must fail because the alleged misstatement was not material. Despite Plaintiff's contentions otherwise, her claims under Section 1692e carry a materiality requirement. See Jensen, 791 F.3d at 416 (holding that "misstatements must be material to be actionable under § 1692e"); Thomas, 2017 WL 1250988, at *15 (applying the materiality standard for claims under Section 1692e, 1692e(2), and 1692e(10)). The Third Circuit has explained that the materiality standard is a "corollary of the least sophisticated debtor standard," and is "not a particularly high bar." Jensen, 791 F.3d at 421. A statement is material if it is "capable of influencing the decision of the least sophisticated debtor." Id. Thus, the materiality requirement only precludes "claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor." Id. at 422.

Plaintiff's claim under Section 1692e(2)(A) satisfies the materiality requirement. As explained above, Defendant's letter indicated that it was authorized to seek the Collection Charge, when in fact it was not. Defendant nonetheless argues that this alleged misstatement was not material, because Plaintiff did "not allege [that] her ability to intelligently respond to the letter was, or even could have been, frustrated." Reply at 5. Yet "the pertinent question is not whether the statements at issue actually influenced the debtor, but whether the statements are *capable of* influencing the decision of the least sophisticated debtor." Kaymark, 2016 WL 7187840, at *9 (emphasis in original). In other words, the inquiry is an objective one, not a subjective one. Here, the Amended Complaint specifically alleges that the letter's misstatement "misleads consumers

by creating the false impression that consumers have incurred a collection fee due and owing." Am. Compl. ¶ 37; see also id. ¶ 42 (alleging that the misrepresentation "carried the real risk of harm that the Plaintiff would pay an amount in excess of what she actually owed and in excess of what Defendant could legally collect or attempt to collect").

The Court agrees that Defendant's alleged misstatements would likely deceive the least sophisticated debtor about the "character, amount, and status of the debt," in violation of Section 1692e(2)(A), because the least sophisticated debtor would likely believe that Defendant was entitled to collect the Collection Charge, when in fact it was not. This was not a hypertechnical misstatement; tacking on an unauthorized fee not only runs the risk of deceiving the least sophisticated debtor about the amount of the debt, but could also influence debtors' decisions with respect to the debt. See, e.g., Thomas, 2017 WL 1250988, at *15 (holding that defendant's letter's "implicit representation that [the lender] *does* have such authority [to demand a collection charge, despite the fact that it was not authorized by contract or law,] would likely deceive the least sophisticated debtor about 'the character, amount, or legal status of any debt' in violation of Section 1692e(2)(A)); Kaymark, 2016 WL 7187840, at *10 (holding that "the estimated/anticipated, but not-yet-incurred, fee demands" were " "capable of influencing the decision of the least sophisticated debtor," and thus satisfied the materiality requirement); Maronyan v. Fin. Credit Network Inc., No. 15-2953, 2017 WL 57835, at *5 (C.D. Cal. Jan. 3, 2017) ("A balance that is inflated . . . is undoubtedly material, as it is quite plausible that a debtor makes decisions about how to respond to such a demand for payment based on the amount she might potentially owe."); Gorman v. Messerli & Kramer, P.A., No. 15-1890, 2016 WL 755618, at *5 (D. Minn. Feb. 25, 2016) (noting that "a debt collector's false statements in a dunning letter asserting that a debtor owes an amount the debt collector is unauthorized to collect should almost

16

always be considered material"). Accordingly, Plaintiff's claim under 1692e(2)(A) will not be dismissed on materiality grounds.

Defendant's motion to dismiss Plaintiff's Section 1692e claims is denied.

**C. Class Allegations**

Finally, Defendant argues that Plaintiff's class allegations should be stricken because she cannot satisfy Rule 23's numerosity and ascertainability requirements. These arguments are premature.

Generally, questions about whether a proposed class meets the requirements of Rule 23 are reserved for after Plaintiff moves for class certification. See, e.g., 6803 Blvd. E., LLC v. DIRECTV, Inc., No. 12-2657, 2012 WL 3133680, at *2 (D.N.J. July 31, 2012). Indeed, because discovery is usually required to make such determinations, class allegations are only struck in the "rare few" cases "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011); see also Luppino v. Mercedes-Benz USA, LLC, No. 09-5582, 2013 WL 6047556, at *3 (D.N.J. Nov. 12, 2013) ("[I]t would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still ongoing.") (quotation omitted). This is not one of those cases.

First, Defendant maintains that Plaintiff cannot satisfy Rule 23's numerosity requirement because "the class indisputably is limited to approximately ten individuals." Def.'s Br. at 13. Defendant primarily bases this contention on representations made by Michael Selbitschka, a Director of Operations for Defendant, in a standalone affidavit submitted after Defendant's reply brief was filed. Dkt. No. 17. On a motion to dismiss, "courts generally consider only the

allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quotations omitted). Because the Selbitschka Affidavit does not fall into any of these categories, the Court will not consider it at this time.[9] At this stage, the Court must accept as true the Amended Complaint's allegation that Defendant transmitted hundreds or thousands of letters that misrepresented the amount the consumer actually owed. Am. Compl. ¶¶ 15, 36. There is simply nothing in the pleadings that demonstrates that Plaintiff cannot satisfy Rule 23's numerosity requirement.

Second, Defendant contends that Plaintiff cannot satisfy Rule 23's ascertainability requirement because liability hinges on whether the recipients of Defendant's letters actually read them. Reply at 9-10. Yet Defendant has not identified any authority for the proposition that FDCPA liability hinges upon whether the letter was read. And indeed, it appears that it does not. See Sadler v. Midland Credit Mgmt., Inc., No. 06-5045, 2009 WL 901479, at *2 (N.D. Ill. Mar. 31, 2009) (holding that "at least for the purpose of recovering statutory damages, the statute d[oes] not require proof that the plaintiff actually *read* the allegedly confusing letter, only that it was *sent*") (emphasis in original) (citation omitted); see also Macy v. GC Servs. Ltd. P'ship, 318 F.R.D. 335, 339 (W.D. Ky. 2017); Boles v. Moss Codilis, LLP, No. 10-1003, 2012 WL 12861080, at *13 (W.D. Tex. Jan. 17, 2012); Herrera v. LCS Fin. Servs. Corp., 274 F.R.D. 666, 677 (N.D. Cal. 2011). Yet even if that were true, without substantial briefing on this issue and without the benefit of discovery, it is evident that this is a matter better suited for determination at the class certification stage.

Defendant's motion to strike Plaintiff's class allegations is denied.

---

[9] Plaintiff's request for attorneys' fees in connection with opposing the Selbitschka Affidavit is denied.

**III.	CONCLUSION**

For the reasons set forth herein, the motion to dismiss is **GRANTED** in part and **DENIED** in part.  An appropriate Order accompanies this Opinion.

>	*/s Madeline Cox Arleo*
>	**Hon. Madeline Cox Arleo**
>	**United States District Judge**